Joel E. Elkins (SBN 256020)
jelkins@weisslawllp.com
**WEISSLAW LLP**
9107 Wilshire Blvd., Suite 450
Beverly Hills, CA 90210
Telephone: 310/208-2800
Facsimile:  310/209-2348

*Attorneys for Plaintiff*

[Additional counsel appear on signature page]

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LR TRUST, | Case No. |
| Plaintiff, | |
| v. | **COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| MULESOFT, INC., GREG SCHOTT, MARCUS RYU, MARK BURTON, MICHAEL CAPELLAS, STEVEN COLLINS, YVONNE WASSENAAR, GARY LITTLE, RAVI MHATRE, and ANN WINBLAD, | JURY TRIAL DEMANDED |
| Defendants. | |

Plaintiff LR Trust ("Plaintiff"), by and through its undersigned counsel, for its complaint against defendants, alleges upon personal knowledge with respect to itself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1. This is an action against MuleSoft Inc. ("MuleSoft" or the "Company") and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(d)(4), 14(e) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(d)(4), 78n(e), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14d-9, 17 C.F.R. §240.14d-9(d) ("Rule 14d-9") and to enjoin the expiration of a tender offer on a proposed transaction, pursuant to which MuleSoft will be acquired by salesforce.com, inc. ("Salesforce") through its wholly owned subsidiary Malbec Acquisition Corp. ("Offeror") (the "Proposed Transaction").

2. On March 20, 2018, MuleSoft and Salesforce issued a joint press release announcing that they had entered into an Agreement and Plan of Merger dated March 20, 2018 (the "Merger Agreement") to sell MuleSoft to Salesforce. Under the terms of the Merger Agreement, Offeror commenced a tender offer (the "Offer") to purchase all of the outstanding shares of MuleSoft common stock for consideration in the form of: (i) $36.00 in cash; and (ii) 0.0711 of a share of Salesforce common stock (the "Offer Price"), valued at approximately $44.89 per share based on the closing price of Salesforce common stock on March 19, 2018, the last trading day before the public announcement of the Proposed Transaction.

3. The Proposed Transaction is valued at approximately $6.5 billion. The Offer commenced on April 2, 2018 and will expire at 11:59 p.m. New York City Time on May 1, 2018.

4. On April 2, 2018, MuleSoft filed a Solicitation/Recommendation Statement on Schedule 14D-9 (the "Recommendation Statement") with the SEC. The Recommendation Statement, which recommends that MuleSoft stockholders tender their shares in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) MuleSoft's and Salesforce's financial projections, relied upon by MuleSoft's financial advisor

Goldman Sachs & Co. LLC ("Goldman"); (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by Goldman; and (iii) the fees paid to Goldman for the past work it has performed for MuleSoft.  The failure to adequately disclose such material information constitutes a violation of Sections 14(d), 14(e) and 20(a) of the Exchange Act as MuleSoft stockholders need such information in order to make a fully informed decision whether to tender their shares in favor of the Proposed Transaction or seek appraisal.

5. In short, the Proposed Transaction will unlawfully divest MuleSoft's public stockholders of the Company's valuable assets without fully disclosing all material information concerning the Proposed Transaction to Company stockholders.  To remedy defendants' Exchange Act violations, Plaintiff seeks to enjoin the expiration of the Offer unless and until such problems are remedied.

**JURISDICTION AND VENUE**

6. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(d)(4), 14(e) and 20(a) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

7. The Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff's claims arose in this District, where a substantial portion of the actionable conduct took place, where most of the documents are electronically stored, and where the evidence exists.  MuleSoft is incorporated in Delaware and is headquartered in this District.  Moreover, each of the Individual

Defendants, as Company officers or directors, either resides in this District or has extensive contacts within this District.

# PARTIES

9. Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of MuleSoft.

10. Defendant MuleSoft is a Delaware corporation with its principal executive offices located at 77 Geary Street, Suite 400, San Francisco, California 94108. MuleSoft's common stock is traded on the New York Stock Exchange under the ticker symbol "MULE."

11. Defendant Greg Schott ("Schott") has been Chief Executive Officer ("CEO") of the Company since February 2009 and Chairman of the Board since March 2009. Defendant Schott previously served as the Company's President from March 2009 to November 2016.

12. Defendant Marcus Ryu ("Ryu") has been a director of the Company since December 2017.

13. Defendant Mark Burton ("Burton") has been a director of the Company since January 2009.

14. Defendant Michael Capellas ("Capellas") has been a director of the Company since June 2015.

15. Defendant Steven Collins ("Collins") has been a director of the Company since July 2014.

16. Defendant Yvonne Wassenaar ("Wassenaar") has been a director of the Company since December 2017.

17. Defendant Gary Little ("Little") has been a director of the Company since August 2006.

18. Defendant Ravi Mhatre ("Mhatre") has been a director of the Company since May 2007.

19. Defendant Ann Winblad ("Winblad") has been a director of the Company since September 2006.

20. Defendants Schott, Ryu, Burton, Capellas, Collins, Wassenaar, Little, Mhatre and Winblad are collectively referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

21. Salesforce develops enterprise cloud computing solutions with a focus on customer relationship management. It is a Delaware corporation with its principal executive offices located at The Landmark @ One Market, Suite 300, San Francisco, California 94105. Salesforce's common stock is traded on the New York Stock Exchange under the ticker symbol "CRM."

22. Offeror is a Delaware corporation and a wholly owned subsidiary of Salesforce.

## SUBSTANTIVE ALLEGATIONS

**Company Background and Strong Financial Outlook**

23. Founded in 2006, San Francisco-based MuleSoft is a software company that provides an integration platform for connecting applications, data and devices. The Company's Anypoint Platform integrates or connects software as a service ("SaaS") applications and existing legacy applications through application programming interfaces ("API"), software intermediaries that allow two applications to talk to each other and share data.

24. As of December 31, 2017, MuleSoft had over 1,200 customers located in over 60 countries across all major industries. The Company has a direct sales force focusing on the largest global organizations and also partners with system integrators and independent software vendors. MuleSoft's customer base includes high profile companies such as Coca-Cola, VMware, GE, Accenture, Airbus, AT&T and Cisco, among others.

25.     The Company has recently experienced exceptional growth, nearly tripling its total revenue between 2015 and 2017, from $110.3 million to $296.5 million. Underscoring its potential for continued growth, following its March 2017 initial public offering ("IPO"), the Company has consistently generated positive results.

26.     For example, on October 26, 2017, the Company announced its third quarter financial results, including total revenue of $77.6 million, a 57% increase from the third quarter of 2016. In the press release, Defendant Scott was quoted as stating:

> We delivered revenue well ahead of expectations in the third quarter, driven by robust market demand, strong sales execution, and healthy large deal activity . . . . Across industries, disruption is being created by the convergence of major technology forces, such as mobile, cloud, big data, and the Internet of Things. Our Anypoint Platform enables customers to build application networks to adapt to and capitalize on these trends. By making it easy to connect applications, data and devices in a standardized way, Anypoint Platform enables our customers to quickly deliver differentiated customer experiences, new revenue channels, and entirely new business models.

27.     On February 15, 2018, the Company announced its fourth quarter and fiscal year 2017 financial results. For the quarter, total revenue was $88.7 million, a 60% increase from the fourth quarter of 2016. Fiscal 2017 total revenue was $269.5 million, a 58% increase from fiscal 2016. The Company also provided guidance for 2018, including total revenue between $87 million and $90 million for the first quarter of 2018 and total revenue between $405 million and $415 million for fiscal year 2018. Moreover, the Company set a target of $1 billion in total revenue in 2021. Defendant Scott commented on the successful quarter, stating:

> Robust market demand and strong sales execution enabled us to deliver fourth quarter and fiscal 2017 revenue well ahead of expectations . . . . We are excited about MuleSoft's growth opportunity and expect to reach $1 billion in total revenue in 2021. Our disruptive platform is addressing one of the largest areas of enterprise IT spend, and we're confident in our long-term strategy to become the de facto application network platform for our customers to become more agile and to transform their businesses.

- 6 -
COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

**The Proposed Transaction**

28. MuleSoft and Salesforce have long-standing ties, including an established commercial relationship and Salesforce's previous investment in MuleSoft prior to its IPO.

29. Following a number of communications between representatives of MuleSoft and Salesforce in February 2018, on February 26, 2018, Defendant Schott met with Marc Benioff ("Benioff"), the Chairman, CEO and co-founder of Salesforce. At the meeting, Benioff asked Defendant Schott if the Board would be open to the possibility of a combination of the two companies.

30. On March 2, 2018, Salesforce sent MuleSoft a nonbinding proposal expressing an interest in acquiring MuleSoft for $38.00 per share, to be comprised of approximately 50% cash and 50% stock.

31. The Board subsequently authorized MuleSoft management to engage Goldman Sachs as the Company's financial advisor and, at its March 7, 2018 Board meeting, to deliver a counter-proposal to Salesforce of a price of $45.00 per share.

32. On March 8, 2018, Salesforce offered to acquire MuleSoft for $45.00 per share, to be comprised of approximately 80% cash and 20% stock. That same day, MuleSoft and Salesforce entered into an agreement providing for exclusive negotiations through March 20, 2018. Thereafter, the parties negotiated the terms of the merger agreement.

33. On March 20, 2018, Goldman delivered its fairness opinion to the Board and the Board unanimously approved the Proposed Transaction. MuleSoft and Salesforce executed the Merger Agreement that same day and issued a joint press release announcing the Proposed Transaction. The press release stated, in relevant part:

> SAN FRANCISCO, March 20, 2018 -- Salesforce (NYSE: CRM), the global leader in CRM, and MuleSoft (NYSE: MULE), the provider of one of the world's leading platforms for building application networks, have entered into a definitive agreement under which Salesforce will acquire MuleSoft for an enterprise value of

approximately $6.5 billion.

**Comments on the News:**

- "Every digital transformation starts and ends with the customer," said Marc Benioff, Chairman and CEO, Salesforce. "Together, Salesforce and MuleSoft will enable customers to connect all of the information throughout their enterprise across all public and private clouds and data sources—radically enhancing innovation. I am thrilled to welcome MuleSoft to the Salesforce Ohana."
- "With the full power of Salesforce behind us, we have a tremendous opportunity to realize our vision of the application network even faster and at scale," said Greg Schott, MuleSoft Chairman and CEO. "Together, Salesforce and MuleSoft will accelerate our customers' digital transformations enabling them to unlock their data across any application or endpoint."

**MuleSoft: One of the World's Leading Application Network Platforms**
MuleSoft provides one of the world's leading platforms for building application networks that connect enterprise apps, data and devices, across any cloud and on-premise. More than 1,200 customers, including Coca-Cola, Barclays, Unilever and Mount Sinai, rely on MuleSoft to change and innovate faster, deliver differentiated customer experiences, and increase operational efficiency.

**Acquisition to Accelerate Customers' Digital Transformations**
Together, Salesforce and MuleSoft will accelerate customers' digital transformations, enabling them to unlock data across legacy systems, cloud apps and devices to make smarter, faster decisions and create highly differentiated, connected customer experiences.

MuleSoft will continue to build toward the company's vision of the application network with Anypoint Platform, and MuleSoft will power the new Salesforce Integration Cloud, which will enable all enterprises to surface any data—regardless of where it resides—to drive deep and intelligent customer experiences throughout a personalized 1:1 journey.

As part of the world's #1 CRM company and fastest growing top 5 enterprise software company, MuleSoft will be able to accelerate its growth and deliver even more innovation to its customers at scale.

**Details Regarding the Proposed MuleSoft Acquisition**
The boards of directors of Salesforce and MuleSoft have unanimously approved the transaction.

Under the terms of the transaction, the MuleSoft acquisition consideration will be composed of $36.00 in cash and 0.0711 shares of Salesforce common stock per MuleSoft Class A and Class B common share, which represents a per share price for MuleSoft common shares of $44.89 based on the closing price of Salesforce common stock on March 19, 2018. The per share price represents a 36% premium

over MuleSoft's closing share price on March 19, 2018.

Under the terms of the transaction, Salesforce will commence an exchange offer to acquire all of the outstanding shares of MuleSoft. The transaction is expected to close in the second quarter of Salesforce's fiscal year 2019, ending July 31, 2018, subject to the satisfaction of customary closing conditions, including the tender by MuleSoft stockholders of shares representing a majority of the MuleSoft common stock voting power, on a one-vote per share basis, and the expiration of the applicable waiting period under the Hart-Scott-Rodino Antitrust Improvements Act. Stockholders of MuleSoft owning approximately 30% of the outstanding shares have entered into tender and support agreements with Salesforce, pursuant to which they have agreed, among other things, and subject to the terms and conditions of the agreements, to tender their shares of MuleSoft common stock in the exchange offer. Following the successful completion of the exchange offer, MuleSoft shares not tendered in the exchange offer will be converted in a second step merger into the right to receive the same $36.00 in cash and 0.0711 shares of Salesforce common stock, paid in the exchange offer, per MuleSoft share.

**Insiders' Interests in the Proposed Transaction**

34.   Salesforce and MuleSoft insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of MuleSoft.

MuleSoft insiders stand to reap financial benefits for securing the deal with Salesforce. The following table sets forth the cash payments that the Company's non-employee directors stand to receive in connection with their outstanding equity awards:

| Name | Vested MuleSoft Options (#) (1) | Unvested MuleSoft Options (#) (2) | Value of MuleSoft Options ($) (3) | MuleSoft RSU Awards (#) (4) | Value of MuleSoft RSU Awards ($) (5) | Total ($) (6) |
|---|---|---|---|---|---|---|
| Mark Burton | 281,172 | 16,876 | 13,110,490 | — | — | 13,110,490 |
| Michael Capellas | 88,560 | 44,232 | 5,012,898 | — | — | 5,012,898 |
| Steven Collins | 126,746 | 11,796 | 5,912,973 | — | — | 5,912,973 |
| Gary Little | — | — | — | — | — | — |
| Ravi Mhatre | — | — | — | — | — | — |
| Marcus Ryu | — | — | — | 3,786 | 169,954 | 169,954 |
| Yvonne Wassenaar | — | — | — | 3,786 | 169,954 | 169,954 |
| Ann Winblad | — | — | — | — | — | — |

35.     Further, if they are terminated in connection with the Proposed Transaction, MuleSoft's executive officers are set to receive substantial cash payments for their outstanding equity awards, as set forth in the following table:

| Name | Vested MuleSoft Options (#) (1) | Value of Vested MuleSoft Options ($) (2) | Accelerated Unvested MuleSoft Options Upon a Qualifying Termination (#) (3) | Value of Accelerated Unvested MuleSoft Options Upon a Qualifying Termination ($) (4) | Accelerated MuleSoft RSU Awards Upon a Qualifying Termination (#) (5) | Value of Accelerated MuleSoft RSU Awards Upon a Qualifying Termination ($) (6) | Total ($) (7) |
|---|---|---|---|---|---|---|---|
| Greg Schott | 1,527,159 | 66,241,622 | 380,000 | 16,070,200 | — | — | 82,311,822 |
| Mark Dao | 456,810 | 17,281,122 | 460,580 | 17,423,741 | — | — | 34,704,863 |
| Rob Horton | 106,830 | 4,266,707 | 290,176 | 9,965,187 | 25,370 | 1,138,859 | 15,370,753 |
| Matthew Langdon | 554,116 | 23,649,671 | 51,931 | 2,216,415 | 43,271 | 1,942,435 | 27,808,521 |
| Simon Parmett | 528,073 | 21,951,646 | 670,502 | 22,208,970 | 86,550 | 3,885,230 | 48,045,846 |

**The Recommendation Statement Contains Material Misstatements or Omissions**

36.     The defendants filed a materially incomplete and misleading Recommendation Statement with the SEC and disseminated it to MuleSoft's stockholders. The Recommendation Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to tender their shares in connection with the Offer or seek appraisal.

37.     Specifically, as set forth below, the Recommendation Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) MuleSoft's and Salesforce's financial projections, relied upon by MuleSoft's financial advisor Goldman; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by Goldman; and (iii) the fees paid to Goldman for the past work it has performed for MuleSoft. Accordingly, MuleSoft stockholders are being asked to make a decision whether to tender their shares in connection with the Offer or seek appraisal without all material information at their disposal.

*Material Omissions Concerning MuleSoft's and Salesforce's Financial Projections*

38. The Recommendation Statement is materially deficient because it fails to disclose material information relating to the Company's intrinsic value and prospects going forward.

39. First, the Recommendation Statement omits material information regarding MuleSoft management's financial projections and the financial analyses performed by the Company's financial advisor, Goldman.

40. For example, the Recommendation Statement states:

> Goldman Sachs performed an illustrative discounted cash flow analysis on MuleSoft . . . [and] discounted to present value as of December 31, 2017 estimates for MuleSoft's net operating losses (which we refer to as "NOLs") per share, based on the estimated benefits of NOLs for the years 2018 through 2027 as provided by management, as reflected in the NOL forecasts (which we refer to as the "NOL analysis").

Recommendation Statement at 32. The Recommendation Statement fails, however, to disclose the Company's NOL forecasts relied upon by Goldman in its analysis.

41. The Recommendation Statement further sets forth that the Company defines unlevered free cash flow as "cash flow before interest expense." The Recommendation Statement fails, however, to disclose the Company's definition of cash flow or the line item projections used to calculate the Company's cash flow.

42. Moreover, the Recommendation Statement sets forth that in connection with rendering its fairness opinion, "Goldman Sachs reviewed, among other things . . . certain internal financial analyses and forecasts for Salesforce prepared by its management, in each case as approved for Goldman Sachs' use by MuleSoft." Recommendation Statement at 26. Yet, the Recommendation Statement wholly omits the financial analyses and forecasts prepared by Salesforce management.

43. The omission of this information renders the statements in the "Projected Financial Information" and "Opinion of MuleSoft's Financial Advisor" sections of the Recommendation Statement false and/or materially misleading in contravention of the Exchange Act.

*Material Omissions Concerning Goldman's Financial Analyses*

44.     The Recommendation Statement describes Goldman's fairness opinion and the various valuation analyses performed in support of its opinion. However, the description of Goldman's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, MuleSoft's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Goldman's fairness opinion in determining whether to tender their shares in connection with the Offer or seek appraisal. This omitted information, if disclosed, would significantly alter the total mix of information available to MuleSoft's stockholders.

45.     With respect to Goldman's *Selected Companies Analyses*, the Recommendation Statement fails to disclose: (i) the 1 year average and 2 year average next twelve months ("NTM") revenue multiples observed for each of the 13 selected publicly traded companies; and (ii) the benchmarking analyses for MuleSoft in relation to the public companies and the financial operating characteristics and other factors observed by Goldman.

46.     With respect to Goldman's *Illustrative Present Value of Future Share Price Analysis*, the Recommendation Statement fails to disclose: (i) the net debt of MuleSoft used in the analysis; and (ii) quantification of the inputs underlying the discount rate of 13.0%.

47.     With respect to Goldman's *Illustrative Discounted Cash Flow Analysis*, the Recommendation Statement fails to disclose: (i) the terminal year estimate of the free cash flow to be generated by MuleSoft used in the analysis; (ii) quantification of the inputs underlying the discount rate range of 11.0% to 14.0%; (iii) the net debt of MuleSoft used in the analysis; (iv) whether Goldman utilized the Company's unlevered free cash flow figures or the Company's unlevered free cash flow figures less stock-based compensation; and (v) the NOL figures Goldman used in its analysis.

48. When a banker's endorsement of the fairness of a transaction is touted to stockholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

49. The omission of this information renders the statements in the "Opinion of MuleSoft's Financial Advisor" section of the Recommendation Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Fees Received By Goldman From MuleSoft***

50. Further, the Recommendation Statement fails to disclose material information concerning the fees received by Goldman for its past work performed for MuleSoft.

51. The Recommendation Statement sets forth that "Goldman Sachs has provided certain financial advisory and/or underwriting services to MuleSoft and/or its affiliates from time to time for which the Investment Banking Division of Goldman Sachs has received, and may receive, compensation, including having acted as an underwriter on MuleSoft's initial public offering in March 2017." Recommendation Statement at 33. The Recommendation Statement fails, however, to disclose the fees received by Goldman for these services.

52. Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives. MuleSoft stockholders need to be provided with the historical fees received by Goldman for work performed on behalf of MuleSoft to compare these fees to the fees it is expected to receive if the Proposed Transaction is consummated and determine if the expected fee event for Goldman impacted their financial analyses provided to the Board.

53. The omission of this information renders the statements in the "Opinion of MuleSoft's Financial Advisor" and "General" sections of the Recommendation Statement false and/or materially misleading in contravention of the Exchange Act.

54. The Individual Defendants were aware of their duty to disclose this information and acted negligently (if not deliberately) in failing to include this information in the Recommendation Statement. Absent disclosure of the foregoing material information prior to the expiration of the Offer, Plaintiff and the other MuleSoft stockholders will be unable to make a fully-informed decision whether to tender their shares in favor of the Proposed Transaction or seek appraisal and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

**Claims Against All Defendants for Violations
of Section 14(d) of the Exchange Act and SEC Rule 14d-9**

55. Plaintiff repeats all previous allegations as if set forth in full.

56. Defendants have caused the Recommendation Statement to be issued with the intention of soliciting MuleSoft stockholders to tender their shares in the Offer.

57. Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder require full and complete disclosure in connection with tender offers.

58. The Recommendation Statement violates Section 14(d)(4) and Rule 14d-9 because it omits material facts, including those set forth above, which omission renders the Recommendation Statement false and/or misleading.

59. Defendants knowingly or with deliberate recklessness omitted the material information identified above from the Recommendation Statement, causing certain statements therein to be materially incomplete and therefore misleading. Indeed, while defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Proposed Transaction, they allowed it to be omitted from the Recommendation Statement, rendering certain portions of the Recommendation Statement materially incomplete and therefore misleading.

60. The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff and the Company's stockholders, who will be deprived of their right to make an informed decision whether to tender their shares or seek appraisal if such misrepresentations and omissions are not corrected prior to the expiration of the Offer. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that defendants' actions threaten to inflict.

## COUNT II

**Claims Against All Defendants for Violations of Section 14(e) of the Exchange Act**

61. Plaintiff repeats all previous allegations as if set forth in full.

62. Defendants violated Section 14(e) of the Exchange Act by issuing the Recommendation Statement in which they made untrue statements of material facts or failed to state all material facts necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading, or engaged in deceptive or manipulative acts or practices, in connection with the tender offer commenced in conjunction with the Proposed Transaction.

63. Defendants knew that Plaintiff would rely upon their statements in the Recommendation Statement in determining whether to tender its shares pursuant to the Offer commenced in conjunction with the Proposed Transaction.

64. As a direct and proximate result of these defendants' unlawful course of conduct in violation of Section 14(e) of the Exchange Act, absent injunctive relief from the Court, Plaintiff has sustained and will continue to sustain irreparable injury by being denied the opportunity to make an informed decision in deciding whether or not to tender its shares or seek appraisal.

# COUNT III

### Claims Against the Individual Defendants for
### Violation of Section 20(a) of the Exchange Act

65. Plaintiff repeats all previous allegations as if set forth in full.

66. The Individual Defendants acted as controlling persons of MuleSoft within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers or directors of MuleSoft and participation in or awareness of the Company's operations or intimate knowledge of the false statements contained in the Recommendation Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

67. Each of the Individual Defendants was provided with or had unlimited access to copies of the Recommendation Statement and other statements alleged by Plaintiff to be misleading prior to or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

68. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Recommendation Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of this document.

69. In addition, as the Recommendation Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Recommendation Statement purports to describe the various issues and information that they reviewed and considered — descriptions which had input from the Individual

Defendants.

70. By virtue of the foregoing, the Individual Defendants have violated section 20(a) of the Exchange Act.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in its favor on behalf of MuleSoft, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

D. Granting such other and further relief as this Court may deem just and proper.

### JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable

Dated: April 6, 2018

**WEISSLAW LLP**
Joel E. Elkins

By: _____

Joel E. Elkins
9107 Wilshire Blvd., Suite 450
Beverly Hills, CA 90210
Telephone: 310/208-2800
Facsimile: 310/209-2348
     -and-
Richard A. Acocelli
1500 Broadway, 16th Floor
New York, NY 10036
Telephone: 212/682-3025
Facsimile: 212/682-3010

*Attorneys for Plaintiff*